IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

SUZETTE HARRISON,

                Plaintiff,

v.                                CIVIL ACTION NO.  2:16-cv-11406

UNITEDHEALTH GROUP, et al,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiff Suzette Harrison's Motion for Judgment on Administrative Record, (ECF No. 13), and Defendant Standard Insurance Company's Motion for Summary Judgment, (ECF No. 14). For the reasons discussed herein, the Court **GRANTS** the Motion for Summary Judgment, **DENIES** the Motion for Judgment on Administrative Record, and **DISMISSES** this case from the docket of the Court.

*I.    BACKGROUND*

Plaintiff Suzette Harrison ("Ms. Harrison"), a former registered nurse, was formerly employed as a medical case manager for UnitedHealth Group ("UHG"). (ECF No. 1-1 at 5.) Ms. Harrison participated in an employee welfare benefit plan ("the Plan") established by UHG. Administrative Record at * 00793 (hereinafter "AR ___"). UHG, through the Plan, is the policyholder of a group long-term disability insurance policy ("the policy") purchased from Defendant Standard Insurance Company ("Standard"). (AR 00012.) Standard is both the insurer

responsible for paying claims made by Plan participants and the plan administrator who determines which participants are eligible for benefits. (AR 00033–00034.) The policy, as a component of the Plan, is subject to the regulatory provisions of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA").

It is uncontested that Ms. Harrison was a qualified participant in the Plan and was covered by the policy beginning in October 2013 when she was forced to cease working due to complaints of low back and leg pain. (ECF No. 15 at 3–4; AR 00112–00116, 00121–00123.) Following the cessation of working, Ms. Harrison received short-term disability benefits from October 8, 2013 to April 5, 2014, which Standard approved and paid for under the Plan while she underwent treatment. (AR 00628–00634.) In April 2014, Ms. Harrison had a spinal cord stimulator implanted to relieve her pain. (AR 00638–00642, 00651–00655.) In May 2014, after Ms. Harrison's short-term benefits expired, Standard awarded her long-term disability benefits, which lasted until December 2015 when Standard terminated the benefits. (AR 00709–00712, 01089–01093.)

Standard contends that following Ms. Harrison's medical procedure, Ms. Harrison progressed to the point where a current medical evaluation of Ms. Harrison's abilities showed that there was insufficient medical evidence to demonstrate that she lacked the functional capacity to perform the Material Duties of her Own Occupation within the scope of her license, and was therefore no longer eligible for payments of Plan benefits. (AR 01090–01092.) Following the termination decision by Standard, Ms. Harrison submitted an administrative appeal of the decision to close her claim. (AR 01135–01150.) Upon review, Standard determined that the medical evidence did not support a conclusion that would find Ms. Harrison's condition severe enough to

2

prevent her from working in her Own Occupation, and as such, resulted in Standard upholding its prior decision. (AR 01219–01231.) Ms. Harrison contests Standard's findings, and alleges that Standard's review process was flawed and tainted by a structural conflict of interest. (*See* ECF No. 13 at 2.)

Having exhausted all of her administrative remedies, Ms. Harrison appealed Standard's decision and filed the instant Complaint in the Circuit Court of Kanawha County, West Virginia, which Standard removed to this Court. Ms. Harrison asks this Court to order payment by Standard of long-term disability benefits, or to enter judgment for benefits wrongfully denied. (ECF No. 13.) Standard asks this Court to affirm its decision that Ms. Harrison is no longer qualified as disabled, and to confirm its decision to stop providing long-term benefits. (ECF No. 14.)

Ms. Harrison filed a Motion for Judgment on Administrative Record on May 30, 2017. (ECF No. 13.) Standard filed a response on June 13, 2017, (ECF No. 17), to which Ms. Harrison replied on June 20, 2017, (ECF No. 18.) Standard filed its Motion for Summary Judgment on May 30, 2017. (ECF No. 14.) Ms. Harrison filed a response on June 13, 2017, (ECF No. 16), to which Standard replied on June 20, 2017, (ECF No. 19). As such, the parties' cross-motions are ripe for review by this Court.

## II. LEGAL STANDARD

> A plaintiffs' § 1132 claim challenging a denial of benefits is analogous to a claim arising under the common law of trusts. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989). Accordingly, a jury trial is inappropriate, and such claims are properly decided through cross-motions for summary judgment on the basis of the administrative record that was relied upon by the plan administrator who denied the benefits claim. *See Berry v. Ciba-Geigy Corp.*, 761 F.2d 1003, 1007 (4th Cir. 1985), *In re Vorpahl*, 695 F.2d 318, 320 (8th Cir. 1982).

3

*Caldwell v. Std. Ins. Co.*, No. 2:14-cv-25242, 2015 U.S. Dist. LEXIS 112122, at *4–5 (S.D. W. Va. August 25, 2015).

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. That rule provides that a court should grant summary judgment if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is inappropriate, however, if there exist factual issues that reasonably may be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). When construing such factual issues, the Court must view the evidence "in the light most favorable to" the party opposing summary judgment. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Liberty Lobby*, 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." (citation omitted)).

The moving party may meet its burden of showing that no genuine issue of fact exists by use of "depositions, answers to interrogatories, answers to requests for admission, and various documents submitted under request for production." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). Once the moving party has met its burden, the burden shifts to the nonmoving party to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If a party fails to make a sufficient showing on one element of that party's case, the failure of proof "necessarily renders all other facts immaterial." *Id.* at 323.

"[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 256. "The mere existence of a scintilla of evidence" in support of the nonmoving party is not enough to withstand summary judgment; the judge must ask whether "the jury could reasonably find for the plaintiff." *Id.* at 252.

## III. DISCUSSION

> ERISA is a comprehensive statutory scheme that regulates qualifying employee pension and welfare-benefits plans, including those that provide disability insurance. *See generally Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 105 S. Ct. 2380, 85 L. Ed. 2d 728 (1985). ERISA "establishes various uniform procedural standards concerning reporting, disclosure, and fiduciary responsibility" for such plans, but "does not regulate the[ir] substantive content." *Id.* at 732.
> 
> "[E]mployers have large leeway to design disability and other welfare plans as they see fit." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 833, 123 S. Ct. 1965, 155 L. Ed. 2d 1034 (2003). "The plan, in short, is at the center of ERISA." *US Airways, Inc. v. McCutchen*, 133 S. Ct. 1537, 1548, 185 L. Ed. 2d 654 (2013). Unsurprisingly, given this focus on the individualized nature of each ERISA plan, "the validity of a claim to benefits under an ERISA plan is likely to turn on the interpretation of terms in the plan at issue." *Firestone Tire*, 489 U.S. at 115.

*Caldwell*, 2015 U.S. Dist. LEXIS 112122, at *5 (S.D. W. Va. August 25, 2015).

### a. Level of Deference

Before the Court addresses the merits of the parties' arguments, the Court must determine what level of deference should be applied to Standard's decision to terminate Ms. Harrison's benefits.

An ERISA plan administrator's decision to deny benefits is reviewed *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire*, 489 U.S. at 115 (1989). If the plan

5

administrator is conferred discretion by the terms of the plan, the proper standard of review is abuse of discretion. *See Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008).

Here, the policy contains an "allocation of authority" provision, which clearly grants Standard discretion to determine if a Plan participant is eligible for benefits. (AR 00033–34.) Both parties agree, and this Court finds, that the Plan confers discretionary authority on the administrator in the exercise of its power, thus this Court should apply an abuse of discretion standard. (*See* ECF Nos. 13 at 2; 15 at 13–15.) However, Ms. Harrison argues that Standard was placed in a structural conflict of interest to which it succumbed. (ECF No. 13 at 2, 16.) Due to the alleged tainted decision, Ms. Harrison argues that this Court should grant little deference because the administrator acted under a conflict of interest. (*Id*.) On this basis, the Court will first determine if there was a conflict of interest and what type of deference should be accorded.

The presence of a plan administrator's conflict of interest does not modify the abuse of discretion standard; instead, a conflict of interest is one factor to be considered when "reviewing the reasonableness of a plan administrator's discretionary decision." *Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 630–31 (4th Cir. 2010) (citing *Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105 (2008)). The Court may assess a conflict of interest "as one of the factors considered in determining [the] reasonableness" of a plan administrator's decision. *Champion v. Black & Decker (U.S.) Inc.*, 550 F.3d 353, 359 (4th Cir. 2008). If a factor "suggests [that] a plan administrator did not act reasonably and thereby abused its discretion, it must be weighed against other indicators that the administrator 'was not inherently biased.'" *Caldwell*, 2015 U.S. Dist. LEXIS 112122, at *5 (S.D. W. Va. August 25, 2015) (quoting *Williams*, 609 F.3d at 632). A structural conflict of interest should not have a significant role in the analysis when the insurer's

6

conduct demonstrates a lack of bias. *Williams*, 609 F.3d at 632. The court in *Williams* determined that lack of bias was shown when the insurer initially determined that the plaintiff seeking benefits was disabled, paid long-term disability benefits to that plaintiff for almost two years, and based its decision to stop paying benefits on a review of the plaintiff's medical records conducted by two independent doctors. *Id*.

Here, Standard approved Ms. Harrison's application for short-term benefits and paid Ms. Harrison's short-term benefits through expiration. (AR 00643, 00709.) Upon the expiration of the short-term benefits and following Ms. Harrison's surgery to reduce pain in her back, Standard approved Ms. Harrison's long-term benefits but noted that her claim would be reviewed "periodically to confirm [her] continued disability and eligibility for benefits." (AR 00711, 00719.) Standard paid Ms. Harrison long-term benefits for over one year and seven months. (AR 709–712, 01089–01093.) Following Ms. Harrison's surgery in April 2014, she reported significant improvement in her conditions, and the medical records reflected the same. (AR 00753, 00777, 00784, 00786, 00792.) In September 2014, Ms. Harrison indicated that she was "doing well," and she had "no lower extremity weakness" observed on examination. (AR 00832.)

Following this report, Standard consulted physician Akhil M. Chhatre, M.D., a board certified physician in Physical Medicine and Rehabilitation with expertise in pain medicine, to evaluate Ms. Harrison's condition. (AR 00837–00843.) For the next year and two months, Dr. Chhatre evaluated regularly updated medical records regarding Ms. Harrison's progress, and consulted with, although sometimes not the extent he preferred, Dr. Timothy R. Deer, who conducted the spinal implant surgery and was Ms. Harrison's pain management physician. (AR 00837–00843, 00899–00901, 01018–01020, 01055–01058.) Standard also consulted with Dr.

Deer on its own. (AR 01008–01010, 01037–01038, 01052.) Based on Dr. Chhatre's medical evaluation in November 2015, which showed Ms. Harrison's progress regarding her low back and that her shoulder did not require any limitations, Standard had a vocational evaluation of Ms. Harrison's ability to work conducted. (AR 01028–01032, 01040–01044, 01055–01058.) Standard consulted Certified Rehabilitation Counselor, Judith Levy, MS, CRC, to evaluate Ms. Harrison's ability to work in her Own Occupation within the scope of her license as a Registered Nurse with the functional limitations and restrictions identified by Dr. Chhatre. (AR 01082–01086.) Ms. Levy concluded that Ms. Harrison had the functional capacity to work within the scope of her license as a Nurse Case Manager and Utilization Review Nurse. (AR 01084–01085.) Upon this information, Standard terminated Ms. Harrison's long-term benefits. (AR 01089–01093, 01099.)

On appeal, Standard consulted physician Mark Shih, M.D., a board certified physician in Physical Medicine and Rehabilitation, who conducted an independent review of the medical records and determined that the evidence showed that Mr. Harrison continued to improve. (AR 01201–01206.) Concerned by Dr. Deer's note that indicated "a flare or worsening of [Ms. Harrison's] condition," Dr. Shih conducted a second report based upon updated medical records and found that there was no indication of a flare up which would change the prognosis. (AR 01205, 01215.) Therefore, Standard upheld the original decision. (AR 01219–01231.)

Thus, Standard initially determined that Ms. Harrison was disabled and paid long-term benefits for over one year and seven months, and only terminated her benefits after engaging in an independent review of her medicals records, based upon consistent improvements. The decision by Standard is similar to that of the insurer in *Williams*, which was upheld by the Fourth Circuit,

8

and as such, this Court finds that it must conclude the same. Therefore, the Court does not find that there is an indication of bias, and will review Standard's decision that Ms. Harrison was no longer eligible for long-term benefits for abuse of discretion.

*b. Review of Standard's Decision*

When applying the abuse of discretion standard, the administrator's decision "will not be disturbed if reasonable, even if the court would have reached a different conclusion." *Booth v. Wal-Mart Stores, Inc. Associates Health & Welfare Plan*, 201 F.3d 335, 341 (4th Cir. 2000). A court may consider, but is not limited to, the following factors when determining reasonableness:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

*Booth*, 201 F.3d at 342–43 (4th Cir. 2000). With consideration given to these factors, particularly the first, third, and fifth factors, this Court will turn to the administrative record and evaluate Standard's decision to terminate Ms. Harrison's benefits based upon reasonableness under an abuse of discretion standard.

As noted above, Ms. Harrison ceased working due to her pain, was initially awarded short-term benefits, and upon expiration of the short-term benefits was awarded long-term benefits. (AR 00112–00116, 00121–00123, 00628–00634, 00709–00712, 01089–01093.) Under the policy's Own Occupation Definition of Disability that applies during the initial 24-month Own Occupation period, a participant must be "unable to perform with reasonable continuity the

Material Duties of [their] Own Occupation."[1]  (AR 00004, 00009, 00021.)  Under the policy, "[i]f your Own Occupation involves the rendering of professional services and you are required to have a professional or occupational license in order to work, your Own Occupation is as broad as the scope of your license."  (AR 00004.)  The parties do not dispute that Ms. Harrison satisfied the policy's requirements for disability under the Own Occupation provision.  (ECF Nos. 13 at 4; 15 at 3–4.)  Furthermore, it is uncontested that Standard maintained the right to periodically review Ms. Harrison's disability status.

As noted above, in April 2014, Ms. Harrison had a spinal cord stimulator implanted to relieve the pain that rendered her disabled.  (AR 00638–00642, 00651–00655.)  Following the implant, Ms. Harrison reported that the stimulator "has really helped a lot" to reduce pains levels, and her medical records showed significant improvement as well.  (AR 00753, 00777, 00784, 00786, 00792.)  Over the next five months, Ms. Harrison continued to report that she was doing well and that her pain decreased from a 10, on a scale of 1-10, pre-surgery to a 1.  (AR 000528, 00753, 00777, 00784, 00792, 00832)  Based on all of the success, Standard consulted Dr. Chhatre to evaluate Ms. Harrison's condition.  (AR 00837–00843.)  Over the course of one year and two months, Dr. Chhatre completed four written reports regarding Ms. Harrison, each completed based upon current, updated medical records.  (AR 00832, 00837–00843, 00899–00901, 01018–01020, 01055–01058.)  As discussed above, Dr. Chhatre found that Ms. Harrison was continually improving.  During this time, Dr. Chhatre attempted to consult with Dr. Deer; however, he had difficulty consulting with him.  (AR 000834, 00899, 01018.)  Standard requested updated medical records from Dr. Deer and that Dr. Deer conduct a Physician's Report – Musculoskeletal

---

[1] The policy defines "Own Occupation" and "Material Duties" at AR 00021.

regarding Ms. Harrison's functional limitations. (AR 00931, 00956, 00971–00975.) Dr. Deer did not complete the report, noting that he did not conduct functional limitation exams, but provided additional medical records. (AR 01008–01010.) Standard continued its attempt to receive an update regarding Ms. Harrison's functional limitations and work restrictions to no avail, with only updated medical records provided. (AR 01037–01038, 01052.) Relying on Dr. Chhatre's opinion and Dr. Deer's limited input, Standard had Ms. Levy evaluate Ms. Harrison's ability to work in her Own Occupation within the scope of her license as a Registered Nurse with the functional limitations and restrictions identified by Dr. Chhatre. (AR 01082–01086.) Ms. Levy concluded that Ms. Harrison had the functional capacity to work within the scope of her license as a Nurse Case Manager and Utilization Review Nurse. (AR 01084–01085.) Based on Ms. Levy's conclusion and the aggregated medical records and reviews, Standard made its decision that Ms. Harrison was no longer entitled to disability benefits under the qualifications of the Plan regarding her Own Occupation; however, she could request an administrative review of the decision. (AR 01089–01093, 01099.)

On appeal, Ms. Harrison included a letter from Dr. Deer in which he noted that her condition had improved and that she could continue to improve, but that she remained permanently and totally disabled and would not improve enough for her to rejoin the work force. (AR 01127–01128.) Furthermore, Dr. Deer noted that she had a recent flare-up of a new area of pain, which could require more surgery and render her more disabled. (*Id*.) Standard consulted Dr. Shih to review the medical records on appeal. (AR 01207–01208.) Dr. Shih completed two written reports, and ultimately concluded that the updated medical records do not show evidence of a worsening of her conditions, only improvements. Therefore, Dr. Shih concluded that Ms.

11

Harrison would have limitations, but none of them would prevent her from returning to work, and on that basis, Standard upheld its decision. (AR 01204–01205, 01215, 01219–01231.) Standard mailed Ms. Harrison a detailed letter explaining its decision, and that Ms. Harrison had the right to file suit under ERISA. (AR 01219–01231.)

> When applying the abuse-of-discretion standard in an ERISA case, a district court plays a "secondary rather than primary role in determining a claimant's right to benefits." *Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 323 (4th Cir. 2008). That is, if the plan administrator acts reasonably, it is inappropriate to "substitute [the court's] judgment in place of the judgment of the plan administrator." *Id*. A plan administrator's decision is reasonable "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Id*. at 322. Substantial evidence has been held to be "more than a scintilla, but less than a preponderance" and that "which a reasoning mind would accept as sufficient to support a particular conclusion." *Clark v. Nationwide Mut. Ins. Co.*, 933 F. Supp. 2d 862, 880 (S.D.W. Va. 2013)(internal quotations omitted).

*Caldwell*, 2015 U.S. Dist. LEXIS 112122, at *30 (S.D. W. Va. August 25, 2015).

Here, Standard reasonably relied on the opinions of two board certified physicians, who performed six medical reviews, and considered the limited opinions of Ms. Harrison's treating physician. Furthermore, Standard relied on the evaluation of a vocational expert. Contrary to Ms. Harrison's contentions, it was not unreasonable for Standard to rely on the opinions of non-treating physicians when making its decision. *See Childers v. United of Omaha Life Ins. Co.*, No. 3:12-0077, 2013 U.S. Dist. LEXIS 24897, at * 83 (S.D. W. Va. Feb 22, 2013). "Plan administrators are not obliged to accord special deference to the opinions of treating physicians" and are not commanded "to credit the opinions of treating physicians over other evidence relevant to the claimant's medical condition." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003). Additionally, when conflicting medical results are presented, it is the administrator's obligation to resolve the conflict based on its discretion, and as long as the administrator bases its

decision on reliable medical evidence, the administrator is not required to distinguish contrary medical evidence. *Id*. at 834; *Mullins v. AT&T Corp*., 424 F. App'x 217, 223 (4th Cir. 2011).

Based on the evidence presented, it appears to the Court that Standard engaged in a reasoned and principled decision-making process that took into account all of the evidence presented by Ms. Harrison, relied on the judgment of independent consulting physicians, and reached a conclusion logically consistent with the language of the relevant provisions of the policy. Furthermore, Standard considered all of the evidence in its possession and continually sought updated medical records and fresh medical reports for its consulting physicians.

While it might be possible for a court analyzing the record *de novo* to disagree with the conclusion reached by Standard, that is not the inquiry that precedent dictates this Court undertake in this case. Instead, it is the duty of this Court to determine if Standard's decision was an abuse of discretion. Having found that Standard's decision-making process was reasoned, principled, and based on substantial evidence, the Court finds that Standard did not abuse its discretion when it determined that Ms. Harrison did not qualify as disabled under the "Own Occupation" definition of disability, and was therefore no longer eligible for long term benefits.

## IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendant Standard Insurance Company's Motion for Summary Judgment, (ECF No. 14), **DENIES** Plaintiff Suzette Harrison's Motion for Judgment on Administrative Record, (ECF No. 13), and **DISMISSES** this case from the docket of the Court.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: March 28, 2018

_____
THOMAS E. JOHNSTON, CHIEF JUDGE